Judge Mills
delivered the opinion.
Robert M’Clure exhibited bis bill in chancery, representing that, on the 16th September. |S02, a wrilterkcontracl was entered into between John G.‘Brown, Richard Pureel^ and George M’Clure, which reads as follows:
“In case any thing should happen either of us, we conceive it necessary, for the satisfaction of our friends, to make a small memorandum of our affairs, with respect to lands in this country. The land we purchased from Blackburn,. whatever head rights Clarke may take up for us, also the right, which Means is to procure; for us in Christian— likewise what Elliot procures for us in Logan, and any o(tier Jand which we may get in the counties of Warren and Barren, is to-be equally the property of each of us, each paying his proportionable part of the state fees, purchase-money, &c. Signed in Warren county, Kentucky, September 16,1802,
JOHN G. BROWN,
GEORGE M’CLURE,
RICHARD PURCEL.⅝
The bill further suggests, that some lime afterwards, at furthest within two years, George M’Clure, one of the parties to the contract, died in Virginia, where he resided; and in 1804, David M’Clure, who claimed to be his heir, applied to the other two, and they, to recognise bis interest, gave him a writing to the following effect:
“Memorandum: — Whereas, John G. Brown, Richard Purcél and George M’Clure, took tip certain head right® in Christian county, Kentucky: aud George M’Clure having departed this life; this is to testify, that we consider David M’Clure as fully a partner as the said George M’Clure was. Given under our hands this llth day of March. 1804.
Signed, JOHN G. BROWN,'
RICHARD PURCEL.”
David M’Clure, on the 24lh day of October, 1811, assigned this contract, except four hundred acres, for which he had received a deed, to the complainant The bill then proceeds to charge, that Brown and Puree 1 did, under the agreement, appropriate a quantity of lands by certificate, granted by the county court of Christian, before the death pf George M’Clure; and that they industriously concealed *62 from David M’Clure the true situation of the lands, the ti* names> numbers and quantity, of every thing relative to them; and that they commenced assigning, transferring and making sales of the whole lands, without reserving the part of. George M’Clure; and that they assigned the whole of the lands to themselves, and then to the purchasers, except one traet of 400 acres, located in the name of Richard Purcel, who still held the title. The bill then proceeds to state, and an amended bill sets them out more fully, the^ number of eight tracts of four hundred acres each, located, for the partners by Clarke, named in the contract, and ten tracts, some of them containing the same quantity, and some less, by Means, who was employed- The bill then prays, that the parts still held, the title of which is still in Purcel or Brown, may he assigned to the complainant, as so much ef the eighteen different tracts,, towards discharging his third, and that the value of the residue of bis third may be ascertained and decreed to him, To this bill David M’Clure, Brown and Purcel, were made defendants. Against David M Clure publication was made, apd the bill taken pro confesso, he being a resident of Virginia. Pur-cel and Brown answered, admitting the contraet and additional memorandum — and that the lands were located as charged iu the bill, and that they had sold all the head rights taken up by them, except the one named in the assignment, which David M’Clure bad got, and ope in the name of Pur-pel; and about the purchase from Blackburn, there appears to be no claim or controversy. The answers also rely upon the fact, that a!¡ the claims exhibited as located by Clarke and Means, are dated some day or two, or more, before the date of (he article of partnership, and attempt to suggest, as the respondents arc advised, that they cannot of course be included within it But they also alledge, that George M’Clure or David M’Clure did not pay any share of tile expense of surveying or office fees, or any part of the state price. That they had written to David M’Clure in Virginia, requesting bis portion, and that he had refused to contribute one cent; and that as it all fell upon them, who were illy able to bear it, they secured and sold, what they could, and some they sold subject to the state price due thereon. An amended bill now tenders a proportion of the price and expense, aud excuses its not being done before, b.i pleading ignorance in the complainant and David M’-Clure of their right, or of the claims for purchase-money *63 and expenses, in which they had been kept by the defendants. Purcel and Brown. And charges that there were no other claims located by Clarke and Means for them, except those dated before the contract, and challenges the production of any of a subsequent date. To this no further response is given. The circuit court dismissed the complainant’s bill with hosts; and from this decree the complainant has appealed, and how questions the merits of the decree.
t. ,1he “«⅛-deceased a-* gent should P:irt me parties li-■ tigwn, o ba gainst either.
The objection made against carrying this contract into effect, arising from the contract being dated after the certificates were obtained from the county court, cannot be availing. Neither of thb defendants have dared to deny that they were the lands intended; and they have not attempted to shew that there were any other lands which cotild be included. It is,presumable either that the parties were not, at the time, apprized of wbát Means and Clarke had done, in execution of their agency, br that the contract was previously made and post-dated, by mistake; and the Ihtter seems to be very probable, if not certain, from the proof in the cátise. Be this as it may, it is evident, from the terms of thé contract, that the parties, in a very inarti-ficial manner, were then committing to paper what was agreed upon previously, and the reference to the lands acquired by Clarke and Means was bare description of them, as opposed to those purchased from Blackburn, and those lying in other counties. The interpretation of the parties themseives, if shell it can be called, contained in the instrument which recognizes David M’Clure as a party, is also very strong to shew that the head rights claimed by them, hnd anterior to that date located by them, were those to wthich the partnership attached itself, and which they were to hold jointly. VVc (conceive, therefore, that this objection relied on by the answers of the defendants, cannot avail them.
The second ground, however, dn which they rely, to wit, that of a total failure of David M’Clure to furnish a pro-porlionate share of the purchase-money and expenses, as-sunies a much more formidable shape The deposition of Clarke is taken more than once, yet he does not prove that anv part of the wages of his employment was paid by George M’Clure. lie has stated that Means, who is dead, Informed him that he had received his compensation from Stérge irClure; but it is necessary that these deciarauons *64 of Mrtjns, as the agent, should compose a part of the rát Sesí£-> i0 wake them competent. For only in that caáe Would their effect be admissabie against the defendants. This, however, does not appear to be the case; for we are left to conjecture on wbat occasion tbéy were made. It no where appears in the record, that George M’Clure ever advanced any thing; and although the precise time of his death is somewhat uncertain, yet it is clear, the event happened previous to the accruing expenses of surveying, and necessity of discharging the state pride. As to David M’Clure, it is not pretended that he ever furnished any mo-ne?’ an<^ excuse ^or lt *s’ ^‘s 'guoranoe °f his rights and the nature of the claims. To this it may be replied, that he docs not appear to have been ignorant of the writing ¡(self, and it was probably in bis power, and perhaps in bis possession, dud, by its terms, it admonished him of his duty. Besides, in the year 1804, he was fully recognised as a partner, and the presumption is fair, that he was then p0ssesscc] 0j* ¡⅛ terms. Add to this, that it is proved in the cause that be received a letter in Virginia, addressed to him by, the defendant Purcel, requiring money; and in re-he totally refused to advance any, and sent the message that he.would have nothing todo with the lands, and never, till the date of the amended bill, is contribution tender-efj_ The ¡7u] 0f t|)e complainant partakes of the nature a hid for specific execution, and as to such, the principle well settled, that the party asking relief must be guilty of no incites on bis part. If be is, he must fully justify if, by the conduct of his adversary rendering his failure necessary for his own'safety. Here the pretended excuse is, concealment of the circumstances. These circumstances might have been developed, by using reasonable diigeuce, and he has not shewn that David M’Clure or himself ever applied to the defendants for information, or that ever they refused it; but, on the contrary, he refused the money necessary. To permit the complainant, then, or David M’-Clure, under whom he claims, to lie by supinely, when his aid was necessary, and to refuse, the necessary means to se-fcure his part, until he discovered the contract, in the course of events, bad become a profitable one, and then to claim an interest in it, and offer contribution, and plead bis former ignorance of wbat he then did not wish to know, or understand, -would be going greater lengths to enforce the contract thah the rules of equity .will allow. On this *65 ground, then, he is not entitled to relief. But independent of all these circumstances, there is something in the contract itself, and the varioqj facts proved relative to it, when applied to the law under which*the lands were to be taken tip, which presents a formidable objection against the interposition of the chancellor in favor of either party. The law which then allowed the county courts to grant eertifi cates, and permit locations, only gave them the power to allow any oneindividunl four hundred arses, awl that individual must be an actual settler on the spot to be located, and must remain confined to the soil afterwards tor the space of two years; during which time the claim was not assignable, a provision evidently intended to secure the land for himself * | . »- > . ■ , . . as a domiciled citizen, and not tor another, according to the construction given to the act at the present term, in the case of Cates vs. Loftus. For the actual settler hud resident, then, and no other, not even for his employer, was the land intended. Designing to act under tins'law, and acquire lagds by its provisions, iu the present case, three individuals proved at that time, and for sotne time after-wards, all of them, to be residents of the state of Virginia, combine together and employ other individuals to procure head rights, not only one apiece, but the vast number of eighteen, in the names of themselves and divers other individuals for their benefit, in contravention of every principle adopted by the statute: and by this means so large a portion of land beyond their allowance, and without actual settlement themselves, or those whose names they used* and who could not settle for them, if employed to do so, was monopolized, and the law evaded and defeated. 8uch an agreement was evidently frahdem legis, and nb party to it can be entitled to the aid of a court of equity, which regards the wise policy of the law. No merit, then, can be given to the defendants more than the complainant, other than that of the attitude of defendants. One of them as-seris in his answer, that, besides the state price, a good head right of four hundred acres, could theft he had, in the county of Christian, for ten, twenty or thirty dollars, and that the state price was the only difficulty iu obtaining a traci! This assertion, if true, proves one or all of three thir.gs-^-either that labor, settlement, and residence for two years could be procured, against law, at a very low ras* — •r that perjury was then extremely cheap-^or that the *66 county court, then the ministers or centineis of the law* was asleeP at thc>- Post-
⅛ a traer for the of^'atute'en teredTnto'hyOf 3, in which it 3s agreed shwll^contri-biue ratably, ifooe of tbe piitv retuses bb delays his cor.iribvi.tion, en'lt'ed'to^a specific exe cation,unless tbe delay or necessary his ottn *y-
The law ⅜⅛-tWising- be foJ'rai™e d ⅞⅛ 0* 400 -sres,re»tnc-l“d.,he.exer‘ pówe ”to ⅛ g.an; . í a “⅛'⅛ C™ iN,1!3 ‘"‘N VitUI.il, must ⅛⅛ ; n aétuais--- er ;ime* ‘0 'hereon ¾⅛⅛, vvithoir as.signing- his '-hum: m ⅛ requeue*, 'by «¡u»t ⅛ v,l<"
,(⅜ Lvi-eenk-ni ⅛ fraud of the 0*°,⅛'¾ chanieilqi.
Crittenden and Pope for appellant, Bibb contra.
The decision of the court bel*w must be affirmed with costs.